# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

FRANCESCA NICOLE PERERA,

    Plaintiff,

v.                                        Case No. 5:17-cv-422-Oc-32PRL

CITY OF OCALA, JUSTIN D. ARNOLD, in his individual and official capacity, and D. FITZPATRICK, in his individual and official capacity,

    Defendants.

## **O R D E R**

This § 1983 civil rights case is before the Court on Defendants Justin Arnold, Daniel Fitzpatrick, and the City of Ocala's Partial Motion to Dismiss, (Doc. 4), which argues that Counts I, II, V, and VI of the Complaint, (Doc. 1), should be dismissed. Plaintiff Francesca Perera responded in opposition. (Doc. 7).

## I.    BACKGROUND[1]

On September 28, 2013, Perera went to her childhood home in Ocala with her step-father, John Hawkins, to drop off a vehicle and trailer to temporarily

---

[1] These facts are taken from the Complaint. (Doc. 1).

store them there. Perera also brought her dog Zeus, a German Pinscher. Because the home had been unoccupied, someone thought that Perera and Hawkins may be burglarizing it and called the police. Arnold and Fitzpatrick, police officers with the Ocala Police Department, responded to the call and confronted Perera and Hawkins.

Perera explained to Arnold and Fitzpatrick that she had recently returned from military service and was planning on moving back into the home that her family owned. Perera provided Arnold and Fitzpatrick with her Florida Driver's License, which listed her childhood home as her address. Despite this information, Fitzpatrick searched Hawkins for "burglary tools," and demanded to search Perera's truck. Perera consented to a search of her trailer, but not her vehicle. Fitzpatrick threatened Perera that if she did not consent to a search of her vehicle, a K-9 officer would be called to perform a drug sniff. Perera still refused to consent to a search of her truck, so Officer Reghetti and his drug detection dog Ice were called. Since Arnold and Fitzpatrick arrived at the home, they had petted and played with Zeus.

Upon Reghetti and Ice's arrival, Perera was instructed to put Zeus in a chain link kennel on the property. As Perera and Fitzpatrick attempted to do so, Zeus slipped out of his collar and ran to greet Ice. Zeus appeared friendly and nonthreatening. Perera chased after Zeus, and Reghetti screamed at Perera to get her dog or he would shoot him. Reghetti violently kicked Zeus when he

approached Ice. Despite this, Zeus maintained a friendly and nonaggressive demeanor.

As Perera continued to try and corral Zeus, Arnold drew his service pistol and shot Zeus in the head as the dog was backing away. Zues's jaw was left hanging and bleeding. Zeus screamed and ran around to the front of the house, where he collapsed, pawing at his mouth. Hawkins attempted to help the dog, but was forced to stay where he was, and was told: "See what happens when you do not cooperate with law enforcement?" Eventually, Hawkins was allowed to go over to Zeus. Perera and Hawkins wanted to take Zeus to a veterinarian, but were told they were not allowed to leave. Another officer arrived and transported Hawkins and Zeus to the Ocala Emergency Veterinary Clinic, but Perera was informed that she could not accompany them because she was being detained until her truck was searched.

Perera consented to a search of her truck so that she would be allowed to leave and see Zeus. The search revealed no drugs or burglary tools. Zeus was ultimately transferred to the University of Florida Small Animal Hospital, where he underwent surgery and had his jaw wired shut for weeks.

On September 19, 2017, Perera filed a six count Complaint. (Doc. 1). The first four counts are brought under 42 U.S.C. § 1983, and allege: an unconstitutional search by Arnold and Fitzpatrick (Count I), an unconstitutional dog sniff against Arnold and Fitzpatrick (Count II), an

3

unconstitutional use of excessive force against Arnold (Count III), and an unconstitutional false imprisonment against Arnold and Fitzpatrick (Count IV). Additionally, the complaint alleges two Florida law counts pursuant to the Court's supplemental jurisdiction: Gross negligence against Arnold (Count V), and vicarious liability for Arnold's gross negligence against the City of Ocala (Count VI).

Defendants moved to dismiss Counts I, II, V, and VI. They argue that Counts I and II fail to state a claim upon which relief can be granted. Further, the defendants argue, and Perera concedes, that Arnold and Fitzpatrick cannot be held liable for Counts I and II in their official capacities. Defendants move to dismiss Counts V and VI because they are barred by Florida's qualified immunity statute and Florida's "Impact Rule." Alternatively, Defendants contend that the Court should decline supplemental jurisdiction over Counts V and VI.

## II. ANALYSIS

### A. Count I against Arnold and Fitzpatrick individually

Defendants argue that Count I fails to state a claim against either Arnold or Fitzpatrick because the Complaint does not specify which officer actually performed the allegedly unconstitutional search of Perera's vehicle. (Doc. 4 at 5). In support of this allegation, Defendants quote Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) as stating: "Because vicarious liability is inapplicable to . . .

§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (Doc. 4 at 5).

"To prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." Arrington v. Cobb Cty., 139 F.3d 865, 872 (11th Cir. 1998). A search conducted without a warrant or upon probable cause is per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." Johnston v. Tampa Sports Auth., 530 F.3d 1320, 1326 (11th Cir. 2008) (quotations omitted) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).

Although inartfully drafted,[2] the Complaint sufficiently states a claim against both Arnold and Fitzpatrick for an unconstitutional search. (Doc. 1 at ¶¶ 38, 46–48). Defendants do not dispute that Arnold and Fitzpatrick were acting under the color of state law when they conducted their search. See Arrington, 139 F.3d at 872. Although Perera consented to the search, the Complaint plausibly alleges that she did not do so voluntarily. (Doc. 1 ¶ 37). Perera is not required to plead specific details so long as she has alleged factual

---

[2] The Complaint is a quintessential "shotgun pleading," see infra, and for that reason it must be amended.

5

allegations that state a plausible claim for relief.³ See Iqbal, 556 U.S. at 678. The Complaint indicates that both Arnold and Fitzpatrick participated in the search of the vehicle and, therefore, puts them both on notice of their alleged misconduct. (Doc. 1 at ¶¶ 46–48). Additionally, Defendants' reliance on Iqbal is misplaced. (Doc. 4 at 5). Iqbal states that an official cannot be vicariously liable for another's misconduct. 556 U.S. at 676. Here, Perera is not alleging that one officer is liable because of the actions of another, but rather that they are both liable for the search because they both, in some way, participated in the search. (Doc. 1 at ¶¶ 46–48). Thus, Iqbal is inapposite.

**B.     Count II against Arnold and Fitzpatrick individually**

Defendants assert that Count II, which alleges an unlawful dog sniff search, fails to state a claim because it does not state who performed the actions necessary to initiate the dog sniff and fails to state whether a dog sniff actually occurred. (Doc. 4 at 6). This argument also fails. The Complaint states that "FITZPATRICK threatened that if [Perera] would not consent to allow the truck to be [searched] he was going to call a K-9 officer to do a drug sniff." (Doc. 1 ¶ 17). Further, in successive paragraphs the Complaint alleges that Arnold and

---

³ Despite certain cases stating the contrary, the Eleventh Circuit's heightened pleading standard for § 1983 cases has "been replaced by those of the Twombly-Iqbal plausibility standard . . . [which] applies to all civil actions . . . ." Hoefling v. City of Miami, 811 F.3d 1271, 1276 (11th Cir. 2016) (quoting Randall v. Scott, 610 F.3d 701, 707 n.2 (11th Cir. 2010)).

Fitzpatrick detained Perera for a drug sniff, (Doc. 1 ¶ 36), Perera, so that she could see her wounded pet, agreed to the search of her vehicle, (Doc. 1 ¶ 37), and that the search of Perera's vehicle yielded neither drugs nor "burglary tools." (Doc. 1 ¶ 38). From this sequence, it is reasonable to infer that Arnold and Fitzpatrick were involved in a drug dog sniff search that did in fact occur. However, because the Complaint is due to be amended, Perera should strengthen these allegations if she has a factual basis to do so.

### C. Count V against Arnold for Gross Negligence

Defendants contend that Perera's gross negligence claim is nothing more than a claim of negligent infliction of emotional distress, and as such, it is barred by Florida's waiver of sovereign immunity statute and Florida's "Impact Rule." (Doc. 4 at 7–8). Perera responds that her claim is for gross negligence not negligent infliction of emotional distress and therefore is not barred by Florida's "Impact Rule." (Doc. 7 at 6).

Pursuant to Florida Statute section 768.28(9)(a), state officers, employees, and agents are immune from state lawsuits based on "any act, event, or omission of action in the scope of her or his employment or function." Fla. Stat. § 768.28(9)(a). "The immunity may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" Eiras v. Fla., 239 F. Supp. 3d 1331, 1343 (M.D. Fla.

7

2017) (quoting § 768.28(9)(a)). "Conduct meeting the 'wanton and willful' standard in the context of § 768.28(9)(a) must be worse than gross negligence . . . ." Kastritis v. City of Daytona Beach Shores, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011) (quotations omitted) (quoting Sierra v. Associated Marine Insts., Inc., 850 So.2d 582, 593 (Fla. 5th DCA 2003)).

Here, Perera fails to meet either requirement for overcoming immunity. See Eiras, 239 F. Supp. 3d at 1343 (quoting § 768.28(9)(a)). The Complaint alleges that Arnold was acting within the scope of his employment. (Doc. 1 ¶ 7). Further, Count V is for gross negligence, which is insufficient to overcome the immunity granted in § 768.28(9)(a). See Kastritis, 835 F. Supp. 2d at 1225. Although Perera may be able to allege a claim that can overcome the immunity granted in § 768.28(9)(a), she has failed to allege such a claim here. As such, Counts V and VI are due to be dismissed, with leave to amend.[4]

### D. Improper Shotgun Pleading

Although Counts I through IV, when construed liberally, state plausible claims for relief (just barely), there is one error not raised by Defendants that the Court cannot ignore—the Complaint is an impermissible "shotgun pleading." See Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1126 (11th Cir. 2014) (explaining that a "shotgun pleading" is one where each count adopts the

---

[4] Count VI alleges vicarious liability against the City for Arnold's actions in Count V. Thus, if Count V is dismissed, Count VI must be dismissed also.

8

allegations of all preceding counts). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 367 (11th Cir. 1996).

The perils of "shotgun pleadings" are particularly apparent from Defendants' argument concerning Arnold and Fitzpatrick's liability in their official capacity. (See Doc. 4 at 4–5; Doc. 7 at 3). The Complaint states that Arnold and Fitzpatrick are being sued in their personal and official capacities, (Doc. 1 ¶¶ 7–8), and Counts I through V incorporate "all other Paragraphs of this complaint as if fully set forth herein." (Doc. 1 ¶¶ 44, 50, 59, 71).[5] However, after Defendants moved to dismiss Counts I and II because they allege actions against Arnold and Fitzpatrick in their official capacities, (Doc. 4 at 4–6), Perera responded that the officers are only being sued in their official capacities under the state law claims (Count V and VI). (Doc. 7 at 3). Thus, the incorporation of all other paragraphs into Counts I and II led Defendants to believe that Arnold and Fitzpatrick were being sued in both their personal and official capacities. This confusion could have been avoided had the Complaint been drafted properly.

---

[5] Count IV also makes this statement, but the paragraph is unnumbered.

Because repleading will allow Perera to more specifically allege her claims, correct some of the deficiencies identified by Defendants' motion, and correct her "shotgun pleading," the Court, sua sponte, is requiring Perera to amend her entire Complaint. See Paylor, 748 F.3d at 1127 (stating that the District Court, sua sponte, should have demanded repleader when confronted with a "shotgun pleading").

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Partial Motion to Dismiss (Doc. 4) is **GRANTED** to the extent stated herein, but is otherwise **DENIED**. However, the Court, sua sponte requires Perera to file an amended complaint

2. Not later than **May 7, 2018**, Perera shall file an amended complaint as specified herein.

3. Not later than **May 29, 2018**, Defendants shall respond to the amended complaint.

4. The parties' Case Management Report ("CMR") is overdue. Not later than **May 7, 2018**, the parties shall jointly file the CMR form, which is attachment 1 to Doc. 3.

**DONE AND ORDERED** in Jacksonville, Florida this 16th day of April, 2018.

*/s/ Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies to:

Counsel of record